IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:19-CV-451-FL

| | |
|---|---|
| KIM ELIZABETH ROSE THATCHER, | ) |
| Plaintiff, | ) |
| v. | ) **ORDER** |
| ANDREW SAUL, Commissioner of Social Security, | ) |
| Defendant. | ) |

This matter comes before the court on the parties' cross-motions for judgment on the pleadings. (DE 20, 22). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert T. Numbers, II, issued a memorandum and recommendation ("M&R") (DE 25), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm the final decision by defendant. Plaintiff timely objected to the M&R. In this posture, the issues raised are ripe for ruling. For the following reasons, the court rejects the recommendation in the M&R. Plaintiff's motion for judgment on the pleadings is granted, and defendant's motion for judgment on the pleadings is denied.

## BACKGROUND

On June 15, 2014, plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability beginning that month. The application was denied initially and upon reconsideration. A hearing was held on February 13, 2018, and supplemental hearing held on June 28, 2018, before an administrative law judge ("ALJ") who determined that plaintiff

was not disabled in decision dated August 9, 2018. On August 15, 2019, the appeals council denied plaintiff's request for review, making defendant's decision final with respect to plaintiff's claims. Plaintiff commenced the instant action on October 14, 2019, seeking judicial review of defendant's decision.

## DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).[1] The standard is met by "more than a mere scintilla of evidence . . . but less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review . . . is a record of the basis for the ALJ's ruling, which should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir.2013). An ALJ's decision must "'include a narrative discussion describing how the evidence supports each conclusion,'" Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th

---

[1]  Internal citations and quotation marks are omitted from all citations unless otherwise specified.

2

Cir. 2015)), and an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

To assist in its review of defendant's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendation." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medial impairment meets or exceeds the severity of one of the [listed] impairments; (4) the claimant can perform [his or her] past relevant work; and (5) the claimant can perform other specified types of work.

3

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the social security claimant during the first four steps of the inquiry, but shifts to defendant at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the application date. At step two, the ALJ found that plaintiff had the following severe impairments: disorders of the back; affective disorders, anxiety related disorders; personality disorders; and post-traumatic stress disorder. However, at step three, the ALJ determined that these impairments were not severe enough to meet or, either individually or in combination, medically equal one of the listed impairments in the regulations.

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform light work, subject to the following limitations:

> [T]he claimant can occasionally use the upper extremities to engage in overhead lifting, reaching, pulling and pushing bilaterally, but otherwise, can frequently use the upper extremities to frequently lift, reach, pull and push in all other directions; can frequently use the upper extremities to handle, finger, feel and grasp bilaterally, can occasionally climb stairs and ramps, kneel and crouch; can occasionally use the lower extremities to operate foot and leg controls; cannot climb ladders ropes and scaffolds and/or crawl; can have occasional exposure to temperature extremes, vibrations & wetness; and cannot work around dangerous, moving mechanical parts and unprotected heights. The claimant will require the option of alternating between sitting, standing, and walking every 1/2 hour will not need to leave workstation unless on regularly scheduled breaks; can sit for a total of 6 hours in an 8-hour workday with the type of interruptions and regularly scheduled that would not interfere with her ability to complete an 8-hour work schedule; and can stand and walk for a combined total of 6 hours in an 8-hour workday with the types of interruptions and regularly scheduled breaks that would not interfere with her ability to complete an 8-hour work schedule. Further, the claimant possess [sic] a reasoning level of 2 and possess a reasoning level of 2 [sic], the ability to do very short and routine, repetitive tasks in two hour intervals. She can do low stressed occupations not requiring her to complete a fixed number of production quotes on a fixed timeline and/or to perform fast paced assembly line work and can

4

occasionally interact superficially with the general public as well as can occasionally work in tandem with co-workers and supervisors.

(Tr. 31-32). At step four, the ALJ concluded plaintiff is unable to perform any past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that plaintiff can perform. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.  Analysis

Plaintiff argues the ALJ erred in failing to address the opinion of Dr. Susan Glenn ("Dr. Glenn"), and in rejecting the opinions of Dr. Lawrence Onoda ("Dr. Onoda"), Dr. Susan Crittenden ("Dr. Crittenden"), and Christine Gerhard-Dicks (Gerhard-Dicks).

"Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). "Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2). The ALJ must weigh "the medical opinions in your case record together with the rest of the relevant evidence we receive." 20 C.F.R. § 404.1527(b). An ALJ must "evaluate every medical opinion we receive," regardless of its source. 20 C.F.R. § 404.1527(c).

"[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence,

5

it should be accorded significantly less weight." Craig, 76 F.3d at 590. "Under such circumstances, the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178.

Where an opinion is not given controlling weight, the ALJ is responsible for assessing the weight of a medical opinion based on several factors. See 20 C.F.R. § 404.1527(c). Those factors include: 1) whether the physician has examined the applicant; 2) the treatment relationship between the physician and the applicant; 3) the supportability of the physician's opinion, 4) the consistency of the opinion with the record; 5) whether the physician is a specialist; and 6) other factors brought to defendant's attention, such as the amount of understanding of defendant's disability programs and their evidentiary requirements, and the physician's familiarity with other information in the record. See id. § 404.1527(c); Johnson, 434 F.3d at 654. "An ALJ must include a narrative discussion describing how the evidence supports his explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations." Woods v. Berryhill, 888 F.3d 686, 695 (4th Cir. 2018).

1. Dr. Glenn

Dr. Glenn, a neurologist, treated plaintiff "on and off" from 2004 until at least 2018 for her chronic pain. (Tr. 183, 186-88). Plaintiff provided medical records containing Dr. Glenn's opinions about the severity and nature of plaintiff's impairments. In an October 10, 2013, treatment note, Dr. Glenn opined that plaintiff's "exam today looks good and much improved from what she described but she continues to have intermittent focus radicular pain complaints due to L5-S1 irritation. I think this correlates well with her MRI findings." (Tr. 696). In an October 29, 2017, treatment note, Dr. Glenn remarked that plaintiff "is unable to sit for more than 30 minutes and even when she stands intermittently she's unable to make it more than an hour without having

6

to lay down or rest" and plaintiff "is in so much pain and fatigued that she is unable to do more than 1-2 activities during a day and if she overdoes it she has to rest the next day because she is completely depleted." (Tr. 977). In the same record, Dr. Glenn opined, "I don't think [plaintiff] could participate in the competitive workforse [sic] and is severely limitieed [sic] by pain as well as psychological issues", (Tr. 980), and Dr. Glenn indicated that plaintiff's insomnia, abnormality of gait, paresthesia, and Lumbar spondylosis were "unchanged," while her Lumbago and Fibromyalgia had "deteriorated." (Id.). The ALJ did not reference or discuss Dr. Glenn's medical opinions.[2]

Certain issues, such as the disability decision, are reserved to the Commissioner. 20 C.F.R. § 404.1527(d). As such, "when a medical source renders an opinion that a claimant is disabled or unable to work, the ALJ will consider all of the medical findings and other evidence that support the medical sources opinion, but will not necessarily make a favorable disability determination." Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 256 (4th Cir. 2017). Nevertheless, "opinions from any medical source about issues reserved to the Commissioner must never be ignored, and that the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)." SSR 96-5p, 1996 WL 374183, at *3

Here, ALJ failed to discuss or acknowledge in any way the medical opinion provided by Dr. Glenn. In doing so, the ALJ has failed to build an "accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189. Although Dr. Glenn's opinion about plaintiff's ability to participate in the work force was not entitled to controlling weight, the ALJ failed to properly weigh the medical findings and other evidence supporting the medical source's

---

[2] The magistrate judge states that the ALJ noted that Dr. Glenn's opinion "conflicted with her own observations upon examination as well as other medical findings which noted normal gait, full range of motion, negative straight leg raises, negative EMG study results, and no neurological deficits." (M&R (DE 25) at 11). This discussion, however, is absent from the record, as the ALJ never references Dr. Glenn's opinion.

opinion. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 271 (4th Cir. 2017) ("What Dr. McMillan provided—including his interpretation of the MRI and conclusion that it showed an impairment consistent with Brown's complaint of pain—was certainly a 'medical opinion' that the ALJ was obliged to consider.").

Consequently, remand is appropriate for the ALJ to properly weigh the medical opinion of Dr. Glenn. The court turns to consider plaintiff's remaining arguments. See Bird v. Comm'r, 699 F.3d 337, 342-43 (4th Cir. 2012) (considering nondispositive issues because they would "arise again on remand before the ALJ").

2.   Dr. Onoda

Dr. Onoda, a psychologist, has provided treatment to plaintiff over the phone and through video conference more than 190 times. (Tr. 812). In his medical source statement, Dr. Onoda opined that "[a]lthough [plaintiff] participates in activities pertaining to her faith, she has great difficulty relating to friends, family, and the general public." (Tr. 814). Moreover, "[w]hen she has to relate to people, she becomes very anxious, suspicious, agitated, and depressed. Even with basic social interactions, she becomes very distress [sic] to the point of being dysfunctional." (Id.). Regarding plaintiff's ability to concentrate and complete tasks, Dr. Onoda opined that "[h]er ability to sustain focused attention and complete simple everyday tasks has been very poor. Her attention and concentration are very impaired. She has difficulty following simple oral or written instructions." (Id.).

The ALJ rejected Dr. Onoda's opinion in its entirety. In so doing, the ALJ noted that Dr. Onoda described himself as an adjunctive clinician rather than plaintiff's primary treating clinician, and he questioned the quality of Dr. Onoda's observations, which primarily occurred over the phone or by remote video means, rather than in person. (Tr. 36). The ALJ properly

8

Case 5:19-cv-00451-FL   Document 27   Filed 03/15/21   Page 8 of 13

considered these factors in weighing Dr. Onoda's opinions. See 20 C.F.R. § 404.1527(c) (listing the treatment relationship between the physician and the applicant as a factor to be considered). The ALJ also discounted Dr. Onoda's opinion because he diagnosed plaintiff with dissociative identity disorder and post-traumatic stress disorder, but during a January 2015 consultative examination, the examiner noted that plaintiff was unable to endorse any of the symptoms for those diagnoses. (Tr. 37). In examining the consistency of Dr. Onoda's opinion with the record, the ALJ again applied an appropriate factor. See 20 C.F.R. § 404.1527(c).

The ALJ also rejected Dr. Onoda's opinions on grounds that plaintiff's testimony contradicted them. (Tr. 36-37). According to the ALJ, plaintiff's reports of attending church activities, witnessing for her church, and shopping contradicted Dr. Onoda's opinion that plaintiff struggled socially. (Tr. 36). Moreover, plaintiff's testimony that she completes chores, cleans the kitchen, and does laundry, purportedly contradicted Dr. Onoda's opinion that plaintiff requires assistance preparing meals and washing her clothes. (Tr. 37).

Importantly, however "[a]n ALJ may not consider the type of activities a claimant can perform without also considering the extent to which she can perform them." Woods, 888 F.3d at 694–95 (emphasis in original). Although plaintiff testified that she performed the activities referenced by the ALJ, her testimony indicated that she performed them to a very limited extent. In particular, regarding her cooking abilities, plaintiff testified, "so the last few years I've been asking my daughter to cut the vegetables for me . . . she'll be the one to lift the pans . . . She'll be the one to carry the groceries." (Tr. 226). Regarding shopping, plaintiff testified that she progressively does her shopping on Amazon or asks her daughter to pick up cat food. (Tr. 227). Regarding her religious activities, plaintiff testified that "I don't always make it. And then in every single time when I do make it – at the meetings I spend usually at least half the meeting in the car

9

laying down or . . . I just lay out in the back room." (Tr. 226-27). Moreover, she stated, "when I do the ministry work I always spend at least ten minutes out of the half hour laying down . . . I'll do a little bit and I'll lay down." (Tr. 227).

In discrediting Dr. Onoda's opinion because of plaintiff's activities, the ALJ failed to acknowledge the limited extent that plaintiff is able to perform those activities. See Brown, 873 F.3d at 269–70 ("The ALJ noted various of Brown' activities—such as cooking, driving, doing laundry, collecting coins, attending church and shopping—but did not acknowledge the limited extent of those activities as described by Brown or explain how those activities showed that he could sustain a full-time job."); Woods, 888 F.3d at 694–95 ("[T]he ALJ noted that Woods can maintain her personal hygiene, cook, perform light household chores, shop, socialize with family members, and attend church services on a regular basis. But the ALJ did not consider Woods's statements that she cannot button her clothes, has trouble drying herself after bathing, and sometimes needs help holding a hairdryer; that she can prepare simple meals but has trouble cutting, chopping, dicing, and holding silverware or cups . . .").

On remand, when weighing Dr. Onoda's opinions, the ALJ should consider not just the type of plaintiff's daily activities, but also the extent to which she can perform them.

### 3. Dr. Crittenden

Dr. Crittenden has been plaintiff's primary care physician since 2006. (Tr. 957). In a medical source statement, Dr. Crittenden opined that plaintiff was not capable of light work and she was restricted to a less than sedentary capacity lifting no more than five pounds. (Tr. 951-53). Moreover, Dr. Crittenden restricted the duration for reaching, handling, and fingering to less than one-third of the workday and restricted postural activities to only 30 minutes. (Tr. 953-55). After noting that Dr. Onoda and Gerhard Dicks concurred with Dr. Crittenden's opinion, the ALJ

10

rejected it because it was based upon plaintiff's self-reports rather than any clinical diagnostic studies or clinical exam findings. (Tr. 37). The ALJ emphasized that MRI studies conducted in 2016 reflected that plaintiff's degenerative disease was stable without any nerve root compression and plaintiff had no focal neurological abnormalities. (Tr. 37-38).

Yet, in addition to degenerative disease, plaintiff also suffers from fibromyalgia, which is "a disorder of unknown cause characterized by chronic widespread soft-tissue pain particularly in the neck, shoulders, back, and hips, which is aggravated by use of the affected muscles and accompanied by weakness, fatigue, and sleep disturbances." Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 91 (4th Cir. 2020). Importantly, "fibromyalgia symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." Id. at 96. As a result, "physical examinations of patients with fibromyalgia will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." Id.

While reliance on objective medical evidence may be appropriate when considering plaintiff's degenerative disease, "ALJs may not rely on objective medical evidence (or the lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." Id. at 97; see Slaydon v. Saul, No. 7:18-CV-54-FL, 2019 WL 3660573, at *5 (E.D.N.C. Aug. 6, 2019). This is especially true here, where none of plaintiff's providers suspected her of exaggerating her symptoms, and plaintiff did not express interest in pain medicine (Tr. 824, 1015), eliminating a drug-seeking motive for her complaints. See Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (parenthesis in original) ("[T]he ALJ fails to note that neither of Lewis' treating physicians suspected her of exaggerating her symptoms and that she endured various adjustments to her medications as they lost effectiveness over time (without any

11

evidence of drug-seeking behavior)."). Here, the ALJ casts doubt on the veracity of plaintiff's self-reports because she requested that DRG Counseling submit a letter summarizing her treatment, rather than detailed notes from individual sessions, and thereafter a discussion was held with plaintiff to clarify issues and present accurate information. (Tr. 38). Yet, the ALJ does not explain why requesting submission in summary form evinces nefarious intent.

Accordingly, on remand the ALJ shall supplement his evaluation of Dr. Crittenden's opinion by considering factors such as plaintiff's repeated complaints of pain and the medical evidence of fibromyalgia.

4. Gerhard-Dicks

Gerhard Dicks, a licensed clinical social worker,[3] began treating plaintiff in January 2017. (Tr. 949). In a medical source statement, Gerhard Dicks opined that plaintiff had marked restrictions in maintaining sustained concentration and persistence and in understanding and memory. (Tr. 936, 947-48). The ALJ rejected Gerhard Dicks's assessment because a January 2015 consultive examination revealed no problems with sustained concentration or concentration, no memory deficits, a good fund of information, and the ability to make simple calculations. (Tr. 38). In rejecting Gerhard-Dicks's opinion, the ALJ also a relied upon plaintiff's follow-up visit at DRG counseling in October 2016, during which plaintiff was cooperative, her mood was appropriate, and her functioning level was fair. (Id.). Finally, the ALJ relied upon the fact that plaintiff did not display any psychotic features during her April 2018 appointment at Cary Medical Group. (Id.).

---

[3] Social Security Ruling 06–03p provides that "acceptable medical sources" include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists—but not certified physician assistants or licensed clinical social workers. 2006 WL 2329939 at *2 (2006). Nevertheless, the opinions of licensed clinical social workers are "important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." Id. at *3.

While the ALJ properly considered evidence in the record that contradicted Gerhard-Dicks's opinion, the ALJ does not address supporting evidence, including that plaintiff's thought process was described as tangential, scattered, and disorganized (Tr. 629, 845, 979, 1010, 1117, 1119), she presented with rapid speech (Tr. 629, 945), her attention and concentration were distractible (Tr. 1105), and Dr. Onoda opined that plaintiff's ability to sustain focused attention and complete everyday tasks was very poor and severely impaired. (Tr. 814). Importantly, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis, 858 F.3d at 869. Thus, in weighing Gerhard Dicks's opinion on remand, the ALJ must consider contradictory and supporting evidence in the record.

## CONCLUSION

Based on the foregoing, and upon de novo review of the record, the court rejects the recommendation in the M&R. Plaintiff's motion for judgment on the pleadings (DE 20) is GRANTED, and defendant's motion for judgment on the pleadings (DE 22) is DENIED. This matter is REMANDED to defendant pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order. The clerk is DIRECTED to close this case.

SO ORDERED, this the 15th day of March, 2021.

LOUISE W. FLANAGAN
United States District Judge